UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Case No. 24-cr-000391-JDB |
| v. | : |
| | : |
| JARETT ROBERT LEWIS, | : |
| | : |
| Defendant. | : |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States, by and through the undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing for Jarett Robert Lewis. As described herein, the Defendant is being sentenced on one count of a wire fraud relating to a scheme wherein he defrauded a non-profit organization of approximately $320,000. A review of the record and the Defendant's criminal history confirms that the Defendant's fraudulent scheme was a brazen effort to enrich himself at the expense of a non-profit organization based in Washington, D.C. The Defendant's conduct here warrants incarceration.

In the Indictment filed on August 28, 2024, the Defendant was charged with nine counts of wire fraud in violation of 18 U.S.C. § 1343. See ECF 1. The Defendant pled guilty on February 13, 2025, to the charge of wire fraud set forth in Count One of the Indictment. The plea agreement provided that the final offense level was anticipated to be 18, resulting in a guideline range of 27 to 33 months of imprisonment.[1] Plea Agreement at ¶ 4(A)-(D)(ECF 22). As part of the plea agreement, the United States agreed to cap its allocution at the bottom of the Sentencing Guidelines range as calculated by the Court at the time of sentencing. Plea Agreement at ¶ 5. Based on the

---

[1] As set forth in the body of this memorandum, the United States is allocuting for a sentence at the bottom of the applicable guideline. It should be noted that this represents the agreement reached by the parties. However, the plea agreement itself does not include the verbiage limiting the United States' allocution. See ECF 22.

foregoing, and assuming the Court accepts the guidelines calculation set forth by the United States Probation Office, the government respectfully requests that the Court sentence the Defendant to a period of 30 months of incarceration, three years of supervised release, restitution in the amount of $319,063.84 and an order of forfeiture. The Victim also requests that the Defendant be ordered to reimburse the organization for $47,068.40 in attorney's fees incurred as result of assisting in the prosecution of this matter. See First Sealed Notice of Filing, filed on June 9, 2025.

## THE DEFENDANT'S SCHEMES TO DEFRAUD AND ENRICH HIMSELF

### Transfer of Funds

The Defendant was hired by Victim to serve as the Director of Finance in June of 2021 until October 28, 2022, when he was eventually terminated for incompetence. In the position of Director of Finance, the Defendant had access to Victim's bank account at Amalgamated Bank by using passwords provided by the Victim. The password was only provided to two other people within the organization. When properly used, the Defendant was authorized to make payments for goods and services provided to Victim. Instead, on thirty-two separate occasions, the Defendant used his access to the Victim's bank account and transferred funds to his own personal accounts at J.P. Morgan Chase (JPMC). On the first two occasions on March 8, 2021, and March 14, 2021, the Defendant used his own name when he transferred the funds. Thereafter, to avoid detection through a review of the organization's accounting records, he changed the name of the payee to "Digital" while still directing the funds to his account at JPMC. A review of those thirty-two transfers reflect that the Defendant's predations became larger as he grew more comfortable in his scheme.

| Date | Payor | Payee | Payment | Trace |
|---|---|---|---|---|
| 10/8/2021 | Victim | Jarett Lewis | $7,032.00 | 6209194 |
| 10/14/2021 | Victim | Jarett Lewis | $6,329.55 | 4983704 |
| 10/27/2021 | Victim | Digital | $4,764.44 | 4308187 |
| 11/5/2021 | Victim | Digital | $3,400.00 | 9555626 |
| 11/18/2021 | Victim | Digital | $5,329.44 | 4788036 |
| 12/8/2021 | Victim | Digital | $4,874.67 | 4595673 |
| 12/17/2021 | Victim | Digital | $4,659.32 | 1830499 |
| 12/24/2021 | Victim | Digital | $4,865.44 | 4034727 |
| 1/7/2022 | Victim | Digital | $4,876.55 | 2815322 |
| 1/20/2022 | Victim | Digital | $4,895.23 | 5145468 |
| 1/31/2022 | Victim | Digital | $9,798.69 | 5644241 |
| 2/10/2022 | Victim | Digital | $9,000.00 | 6077458 |
| 2/28/2022 | Victim | Digital | $8,000.00 | 1008046 |
| 3/4/2022 | Victim | Digital | $9,000.00 | 4344931 |
| 3/15/2022 | Victim | Digital | $9,000.00 | 3954215 |
| 3/23/2022 | Victim | Digital | $9,000.00 | 2719079 |
| 3/29/2022 | Victim | Digital | $8,500.00 | 0889890 |
| 4/13/2022 | Victim | Digital | $9,675.55 | 1000338 |
| 4/27/2022 | Victim | Digital | $9,750.00 | 6002481 |
| 5/9/2022 | Victim | Digital | $9,500.00 | 3002002 |
| 5/18/2022 | Victim | Digital | $4,800.00 | 3413299 |
| 6/2/2022 | Victim | Digital | $9,700.00 | 5772000 |
| 6/8/2022 | Victim | Digital | $5,700.00 | 5628456 |
| 6/15/2022 | Victim | Digital | $9,800.00 | 0450854 |
| 6/24/2022 | Victim | Digital | $9,000.00 | 3511255 |
| 7/5/2022 | Victim | Digital | $12,000.00 | 1355471 |
| 7/18/2022 | Victim | Digital | $15,000.00 | 2700724 |
| 8/3/2022 | Victim | Digital | $15,000.00 | 4820413 |
| 8/9/2022 | Victim | Digital | $15,000.00 | 7027098 |
| 8/31/2022 | Victim | Digital | $7,000.00 | 8889651 |
| 9/2/2022 | Victim | Digital | $15,000.00 | 3485961 |
| 9/15/2022 | Victim | Digital | $15,000.00 | 5498587 |
| 9/29/2022 | Victim | Digital | $15,000.00 | 6229534 |
| 10/6/2022 | Victim | Digital | $4,700.00 | 5434430 |
| 10/13/2022 | Victim | Digital | $15,000.00 | 8627633 |
| | | | | |
| | **Total** | | **$309,950.88** | |

**Misuse of Victim's Credit Card**

The abuse of his position of trust did not end with transferring funds to his own personal account, the Defendant also made several unauthorized credit card transactions. The Defendant used the organization's VISA card to book and pay for personal travel for the Defendant, family members and friends. For example, the Defendant used the VISA card to book and pay for himself and a female acquaintance to travel to Thailand. The misuse of the credit card amounts to a total loss of $9,112.96. As noted by Victim, the Defendant abused a great deal of trust that was placed in him and concealed his fraudulent actions by falsifying budget reports and booking his personal travel at a time when the Victim was also booking travel for legitimate purposes. See Second Sealed Notice of Filing, filed on June 9, 2025, at p. 1.

**Total Actual Loss**

The fraudulent schemes resulted in the actual loss of $319,063.84, comprised of (1) thirty-two transfers of funds from the Victim's bank account to accounts owned and operated by the Defendant and, (2) the Defendant's misuse of Victim's VISA card. This does not reflect, however, the considerable time and effort on the part of Victim in trying to recover from the fraud and cooperate with the United States. See Sealed Notice of Filing, filed on June 9, 2025, at p. 2. This figure also does not reflect the loss sustained by the Victim for attorney's fees.

I.      **SENTENCING GUIDELINES**

   **Part A: The Guidelines Calculation for the Offense**

In the plea agreement, the parties originally estimated and agreed that the Defendant's offense level was 21 and that after application of a three-point reduction for acceptance of responsibility, the Estimated Offense Level would be at least 18. See Plea Agreement at ¶ 4(A)-

(C) ECF 22.  Pursuant to U.S.S.G. § 3D1.2, the wire fraud counts in the indictment are grouped because the offense level is determined largely based on the total loss.  Specifically, the parties estimated that the following is the Guidelines calculation:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(1) | Base Offense Level | 7 |
| U.S.S.G. § 2B1.1(b)(1)(G) | Loss more than $250,000 | 12 |
| U.S.S.G. § 3B1.3 | Abuse of Position of Trust | <u>2</u> |
| | **Offense Level** | **21** |
| U.S.S.G. § 3E1.1(a) | Acceptance of responsibility | <u>-3</u> |
| | **Final Offense Level** | **18** |

### B. Defendant's Criminal History Score

The PSI's guideline calculation differs from the parties' estimated Guidelines estimation due to the Defendant's criminal history score.  The PSI calculated that the Defendant's prior conviction for credit card fraud (felony) in 2012-CF2-014746 in the Superior Court for the District of Columbia and his conviction for False Personation of an Employee or Officer of the United States in 16-cr-00116 in the United States District Court for the District of Columbia results in a criminal history score of II.

### C. Applicable Guideline Range

The guideline range for a defendant with an offense level of 18 and a criminal history score of II is 30 to 37 months of incarceration.

### D. United States' Recommendation

The United States recommends, for the reason set forth below, that the Defendant be sentenced to a period of 30 months of incarceration.

II.     THE 18 U.S.C. § 3553(a) FACTORS

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are no longer mandatory. However, the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and "should be the starting point and the initial benchmark" in determining a defendant's sentence. *United States v. Gall*, 552 U.S. 38, 46, 49 (2007). Accordingly, this Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 49.

The Court should consider all the applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. at 49-50. The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a). *United States v. Rita*, 551 U.S. 338, 347-351 (2007). The § 3553(a) factors include, *inter alia*: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

### A.     The Nature and Circumstances of the Offenses and the Need for the Sentence to Reflect the Seriousness of the Offenses

The Defendant's conduct was egregious for several reasons. The Defendant was hired into a position of trust by a non-profit organization to serve as the Director of Finance. The Victim's

6

trust in the Defendant was violated numerous several times every month for a year. The Defendant used the Victim's funds to create and support a lavish lifestyle for himself and others.

This scheme was not borne out of necessity. It was not an aberration of behavior for someone with an otherwise solid employment record. It was not the effort of a novice.[2] The Defendant chose his victim by design and care, and then repeatedly plundered the resources of the Victim. This offense abused people, and an organization dedicated to improving our community's way of life. It also undermines the trust of those who donate to these causes. The Defendant's raids on the organization's finances here were not a one-time or isolated incident. It was a considered and sustained pattern of theft of funds that the Defendant perpetrated twice a month for approximately a year. Moreover, the Defendant abused his access to the Victim's credit card to fund international travel for himself and his romantic partner.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

A significant sentence of imprisonment here is necessary for both specific deterrence and general deterrence. While it is unlikely the Defendant will ever be deterred given his criminal history, it is important to deter others in the community who might victimize organizations that survive on the goodwill of donors. Non-profits often operate on a thin budget and should not be susceptible to fraud that make it difficult or impossible to continue their mission.

### C. The History and Characteristics of the Defendant

Unlike some defendants who come before the Court, the Defendant has had every opportunity to choose a different path. Indeed, by the time he was defrauding this Victim, the

---

[2] As discussed herein, the Defendant is a serial fraudster who victimizes non-profit organizations that lack the resources to provide proper oversight.

7

Defendant was in his forties and held a degree in economics from Wheaton College in Massachusetts. The PSI also suggests that the Defendant has always been able to obtain employment on many occasions, and he suffers from no significant health or substance abuse problems. His motivations for the offenses here simply reflect his true character. He is a fraudster.

The Defendant's pervasive history of fraud[3] started more than fifteen years ago when he was convicted of petit larceny in Virginia, at the age of 29, in 2009 and received a suspended sentence of twelve months (PSI, ¶ 46).

Instead of learning from that incident, the Defendant was convicted again in the District of Columbia for credit card fraud in October of 2012. In that matter, the Defendant was able to obtain a position as Finance and Administrator Coordinator for a non-profit organization called Convergence Center for Policy Resolution. In less than two months, the Defendant misused the Victim's credit card fifty-one times to incur expenses of more than $13,000 for hotel, dining and limousine services for his personal benefit. The Defendant was thirty-two years old at the time he abused that position of trust on nearly a daily basis. The Defendant eventually pled guilty and received a suspended sentence and probation.

Undeterred, the Defendant was convicted in the United States District Court for the District of Columbia in 2016 for the False Personation of an Employee or Officer of the United States in case number 16-cr-00116. In that matter, the Defendant falsely represented himself to

---

[3] The United States does not want the Court to be misled. The Defendant's criminal history as an adult started in 2007 according to the PSI. The Defendant has since more than a dozen arrests and/or convictions for other unlawful conduct. In fairness, these matters did not all result in convictions, and they are not properly included in the Defendant's criminal history for guideline purposes. They do, however, present a different picture of the Defendant when viewed against the backdrop of his ever-increasing felonious conduct.

be the chief of staff for a member of the United States House of Representatives.  In September of 2014, the Defendant demanded special privileges at an exclusive restaurant in Miami, Florida.  He also contacted the team formerly known as the Washington Redskins, represented himself to be the chief of staff, and requested field passes.  The Defendant was given thirty-six months of probation and ordered to perform 80 hours of community service in that matter.  The defendant was thirty-five years old.

In 2021, the Defendant obtained his position with Victim and defrauded the organization of more than $300,000.  The offense before this Court is clearly not an aberration or the impetuous act of a juvenile.  It is not a criminal act born of necessity or ignorance.  It is yet another sad and disturbing chapter in the life of a man committed to defrauding others.  For this reason, the Court should impose a period of incarceration.

    D.  **Unwarranted Sentencing Disparities**

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges."  *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second.").  The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences."  *Id.* at 533.  A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the

Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013). The United States' recommendation is consistent with the recommendation in the PSI.

### III.    RESTITUTION AND FORFEITURE

#### A. Restitution

Restitution is mandatory under 18 U.S.C. § 3663A. *See, e.g., United States v. Dickerson*, 370 F.3d 1330, 1335-36 (11th Cir. 2004) ("The MVRA obligates district courts to order restitution in certain cases, including wire fraud."); *United States v. Polichemi*, 219 F.3d 698, 707, 714 (7th Cir. 2000) ("[T]he court must follow the provisions of the Mandatory Victim Restitution Act of 1996 . . . because Olson was convicted of an offense of property [money laundering under § 1957] as described in § 3663A(c)(1)(A)(ii)."). The United States requests that the Defendant be ordered to make restitution in the amount of $319,063.84.

The Defendant should also reimburse the Victim for attorney's fees in the amount of $47,068.40.

#### B. Forfeiture

Consent orders of forfeiture were submitted at the time of the plea in both cases.

**SPECIAL CONDITIONS OF THE SENTENCE AND SUPERVISED RELEASE:**

The government agrees with the special conditions proposed by the United States Probation Office in the PSI. *See* PSI at ¶¶ 106-113. This includes a restitution obligation, financial disclosure, financial restrictions, employment restrictions, and substance abuse testing. *Id.*

## CONCLUSION

The United States respectfully submits that a sentence of 30 months of incarceration, three years of supervised release, and restitution and forfeiture as described herein is an appropriate and fair sentence considering the offense conduct, the need for specific and general deterrence, and the history and characteristics of the Defendant.

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        United States Attorney

By:    /s/ *Michael T. Truscott*
        MICHAEL T. TRUSCOTT
        D.C. Bar No. 1685577
        Assistant United States Attorney
        Fraud, Public Corruption, and Civil Rights Section
        601 D Street, NW, Room 5.1513
        Washington, DC 20530
        (202) 252-7223
        Michael.truscott2@usdoj.gov